# CITY AND SUBURBAN R. R. CO.

*vs.*

# WASHINGTON, WESTMINSTER AND GETTYSBURG R. R. CO.

*Railroads: right to cross other roads; power of Public Service Commission; validity of charters a judicial question.*

The Public Service Commission Act does not take away the right of railroad companies to condemn such property or rights as are necessary for their construction.                    p. 658

The question of whether the charter of a corporation is valid or not is one of a purely judicial nature, and is for the courts and not for the Public Service Commission to decide.    p. 658

Under its authority to build, a railroad company may cross other roads subject to the regulations made or to be made by statute; and an order of the Public Service Commission authorizing the construction of a road, by implication, authorizes it to cross other roads.                          p. 659

Whether, in such a case, the crossing should be at grade or not is for the Public Service Commission to determine.    p. 659

*Decided February 25th, 1914.*

Appeal from the Circuit Court for Prince George's County.  (BEALL, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert W. Wells* and *S. R. Bowen,* for the appellant.

*T. Howard Duckett* (with whom was *Marion Duckett* on the brief), for the appellee.

Boyd, C. J., delivered the opinion of the Court.

The questions involved in this appeal have in effect been disposed of by the opinion filed at this term in the case of the *Mayor and Common Council of Hyattsville* v. *Washington, Westminster and Gettysburg R. R. Co., post,* p. 660. The principal question argued in this case was whether there should have been an order for condemnation against the appellant before the Public Service Commission had determined whether there could be a crossing at grade. The statutes of this State are in more or less confusion as to the proper procedure in cases such as this. In section 306 of Article 23, of the Code, it is provided that: "Every railroad company of this State, heretofore or hereafter incorporated, wherever it shall find it necessary in the construction of its railroad or any lateral branch, is hereby authorized to cross at, under or over grade any railroad now or hereafter constructed;" that section then provides that if the companies can not agree "as to the compensation and terms upon which such crossing or crossings shall be made," the company may condemn the easement of such crossing or crossings in the mode provided for the condemnation of the lands of individuals in and by section 269 of that article. It then provides that if the crossing be at grade, the crossing company shall, at its own expense erect a proper signal station and keep a watchman at the crossing, and that the trains of the company crossed shall have precedence over those of the crossing company; and that if the crossings be under or over grade they shall be so constructed as not to interfere with the passage of trains of the first company.

In 1910 (Chapter 180) what is known as the Public Service Commission Act was passed, and embraces sections 413-468, inclusive, of Article 23 of the Code of 1912. There is nothing in that statute which in terms authorizes the commission to determine whether a railroad crossing should be at, or above or under grade. There is no express reference in it to railroad crossings—either over other railroads or public

streets or roads. The provisions most relied on by the appellant are those in sec. 438 of Art. 23 (sec. 26 of Ch. 180 of the Acts of 1910), which provide that: "No common carrier, railroad corporation or street railroad corporation, shall begin the construction of a railroad or street railroad, or any extension thereof, or exercise any franchise or right under any provision of the railroad law, or of any other law not heretofore lawfully exercised, without first having obtained the permission and approval of the commission. The commission shall have power to grant the permission and approval herein specified whenever it shall, after due hearing, determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service." And by section 55 of the Act of 1910, it is enacted, that all acts and parts of acts conflicting or inconsistent with any provision of that Act were thereby repealed so far as they conflicted or were inconsistent with it. Section 438 is undoubtedly very broad, and it would seem to be necessary to obtain the permission and approval of the commission in order to exercise the right given by section 306 of Article 23, which is a part of the railroad law of the State, although of course its action is subject to section 423, which provides that "Any company, corporation, association, person or partnership, subject to any of the provisions of this sub-title, or other person or party in interest, shall have the right to proceed in the courts to vacate, set aside, or have modified any order of said commission on the grounds that such order is unreasonable or unlawful, as hereinafter more particularly set forth," and section 457 and the succeeding section relate to the procedure.

While the statutes referred to were in the Code, Chapter 117 of Acts of 1912, adding a new article on Eminent Domain, was passed. No reference is made in it to the Public Service Commission Act, and section 7 provides that. "The State, and any municipal or other corporation, commission, board, body or person, which under the laws of this State

has the right to acquire property by condemnation, shall acquire said property, if condemnation proceedings be resorted to, in pursuance of and under the provisions of this article, anything in any other Public General Law or Public Local Law, or private or special statute to the contrary notwithstanding; provided, however, that nothing in this article contained shall apply to, or change the present law or procedure for the opening, closing, widening or straightening of highways." Section 2 provides that "The proceedings shall be begun by the filing of a petition in the Circuit Court of the county," etc., and section 3 that "Upon the filing of said petition, the Court, or any judge thereof, shall pass an order directing a summons to issue for the defendants," and then, after providing for service of summons, order of publication, the answer, etc., it is provided that upon default "the Court shall enter judgment that the said property, or the interest therein of the defendant or defendants so in default be condemned," and that the Court shall render the same judgment if the answer does not deny the right of the petitioner to have the property condemned. If that right is denied the Court hears the question and gives judgment either that the property be condemned or that the petition be dismissed, as the case may be.

It is manifest that the Legislature did not intend by the Public Service Commission Act to take away the right of a railroad to condemn such property and rights as were necessary for its construction. Indeed that commission has no means of exercising such a right, if it could be constitutionally conferred on it. It is equally clear that it is not the tribunal to determine such questions as whether or not the charter of the appellee was valid, which is purely and clearly a judicial question.

In the other opinion we quoted from the order of June 20th, 1912, which showed the Commission had given its permission and approval to the appellee to construct its road from Brentwood to Sandy Springs, and what we said there as to the order of June 25th, 1913, is equally applicable

here—that it did not and was not intended to interfere with the condemnation proceedings. As the property sought to be condemned lies between Brentwood and Sandy Springs, there can be no doubt that the Commission did give its permission and approval to the appellee to cross these tracks, but it had not determined whether the crossing should be at, above or under grade. A railroad may cross another under general authority to build its road, subject of course to such regulations as the statutes may make, and hence it was not necessary for the Commission, in its order, to expressly authorize the right to cross these tracks. "It is manifest that if this could not be done, then a general authority to locate and construct new railroads would be nugatory." *Lewis on Em. Dom.* (3 ed.), sec. 424, and on the same principle, steam railroads may cross the tracks of a street railway, *Ibid.* Many authorities might be cited to the same effect, but the provisions of section 306 of Article 23, quoted above, make it unnecessary. The only question about that was how far the Public Service Commission had the right to determine whether the crossing should be at, under or above grade. As we have said in the other case, and it was conceded by the appellee, that it had the right to so determine, it only remains to decide whether that must be determined before the condemnation proceedings. What we said in the other opinion on that question is equally applicable here, and although it might be well to have the precise powers of the Public Service Commission in reference to such crossings more definitely fixed by statute, we are of opinion that under existing statutes and the circumstances of this case, the method of crossing the appellant's road can still be determined by the Commission, and after it has been so determined by its final action, the Court can so instruct the appraisers and the order already passed shall then be treated as so modified.

> *Order affirmed and case remanded, each party*
> *to pay one-half of the costs in this Court.*